2024 IL App (1st) 240212-U

No. 1-24-0212B

Second Division
May 7, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | No. 24110488401 |
| v. | ) ) | |
| OSONIA GREEN, | ) ) | Honorable Charles Beach |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's denial of pretrial release is affirmed where the court did not err in determining that no condition or combination of conditions on release would mitigate the danger posed by defendant.

¶ 2    Defendant Osonia Green appeals the order of the circuit court denying his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/ art. 110)

(West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly referred to as the Pretrial Fairness Act. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On January 11, 2024, defendant was arrested and charged with armed violence (720 ILCS 5/33A-2(a) (West 2022)), possession of less than 15 grams of heroin (720 ILCS 570/402(c) (West 2022)), possession of less than 15 grams of cocaine (720 ILCS 570/402(c) (West 2022)), and misdemeanor possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2022)). The State filed a petition to detain defendant, contending that he "pose[d] a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.".

¶ 5     The circuit court held a detention hearing on January 12, 2024. At the hearing, the State proffered that the police were dispatched to a call of a domestic disturbance at the Beverly Motel in Chicago. Upon arrival, officers met the complaining witness, who told them that defendant would not allow her to gather her belongings and leave their motel room. The officers asked defendant if he had any firearms on him, and he said that he did not. They also asked if defendant had any firearms in the room, and defendant again replied that he did not. However, the officers observed an "L-shaped bulge" in defendant's waistband, which a protective pat down revealed to be a 9-millimeter handgun. Defendant had not been issued a valid Firearm Owners Identification Card or concealed carry license. Through the pat down, the officers also discovered a container of suspected heroin, a container of suspected cocaine, and a glass pipe.

¶ 6     The State also submitted that defendant's background included a 2011 misdemeanor conviction for aggravated assault and a 2006 misdemeanor conviction for domestic battery. Defendant also had a pending case for misdemeanor endangering the life of a child, for which he

was currently on pretrial release.[1] In that case, the child used defendant's firearm to shoot himself in the foot while defendant was "present and intoxicated on the floor." Finally, the State informed the circuit court that defendant had a 2016 warrant in Iowa for failure to appear in a "narcotics-related" case.

¶ 7    The defense emphasized defendant's non-violence, noting that the offenses underlying the armed violence charge were drug crimes and that defendant was not alleged to have brandished a weapon or resisted arrest. Thus, the defense contended that defendant did not pose a real and present threat and, alternatively, release with conditions like electronic monitoring would mitigate any threat.

¶ 8    After hearing argument from both parties, the circuit court found that the State's proffer established that the proof was evident that defendant committed a detainable offense. The court also determined that defendant posed a real and present danger to the community because (1) both this case and the pending child endangerment case involved possession of a firearm and intoxicating substances and (2) defendant's criminal record "indicat[ed] a history of violent acts." Finally, the court found that no condition or combination of conditions on release would mitigate that danger. The court noted that defendant was already on pretrial release at the time of his arrest, lied to the arresting officers about having a gun, and an out-of-state warrant. Based on these factors, the court concluded that defendant would likely not abide by any release conditions, including electronic monitoring. Thus, the court ordered defendant to be detained.

¶ 9    This appeal followed.

---

[1] Based on the charges filed in this case, the State also filed a petition to revoke defendant's pretrial release in the child endangerment case. The circuit court granted that petition, and we affirmed. *People v. Green*, 2024 IL App (1st) 240211.

¶ 10                                    II. ANALYSIS

¶ 11     Pretrial release is governed by article 110 of the Code (725 ILCS 5/art. 110 (West 2022)). Under the Code, all criminal defendants are presumed eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2022). That presumption is overcome, and a defendant may be denied pretrial release, only if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) no condition or combination of conditions would be sufficient to mitigate the real and present safety threat or flight risk. *Id.* §110-6.1

¶ 12     Initially, we must set forth the arguments defendant raises on appeal. Defendant filed his notice of appeal simultaneously with an attached document stating his "grounds for relief." On the notice of appeal form, defendant checked the boxes indicating that the State failed to show by clear and convincing evidence that (1) he posed a real and present danger and (2) no condition or combination of conditions could mitigate that danger. In the space provided below each of these boxes, defendant wrote simply "[s]ee attached grounds for relief."

¶ 13     Defendant has chosen not to file an appellate memorandum. However, he did file a notice in lieu of an appellate memorandum asking this court to "forgive the mistaken checked boxes" on the notice of appeal form and instead address the arguments raised in the attached "grounds for relief."

¶ 14     Appeals from the denial of pretrial release are taken pursuant to Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023), which provides that a defendant's notice of appeal "shall describe the relief requested and the grounds for the relief requested." In this case, the "grounds for relief"

were filed simultaneously with, and attached to, the notice of appeal. As described, the notice of appeal also incorporates the attachment by referring to it in the space provided below the checked boxes. Additionally, the State accepts defendant's abandonment of the checked boxes and responds to the arguments raised in the "grounds for relief." Thus, we will address the arguments raised in defendant's "grounds for relief."

¶ 15 Before reaching the merits of these claims, however, we discuss the standard of review. The proper standard of review for detention hearings has been the topic of "significant disagreement" among the appellate districts and even different divisions within the First District. *People v. Lee*, 2024 IL App (1st) 232137, ¶ 20. Some courts have applied the abuse of discretion standard of all aspects of detention hearings (*People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18), whereas others have utilized the manifest weight of the evidence standard (*People v. Stock*, 2023 IL App (1st) 231753, ¶ 12). Still others have used a mixed approach under which the circuit court's factual determinations are reviewed for manifest weight, but the ultimate decision regarding detention is reviewed for abuse of discretion. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36. Additionally, at least one justice has endorsed a *de novo* standard of review. *Id.* ¶ 67 (Ellis, J., specially concurring).

¶ 16 In this case, neither party takes a position on the standard of review. Regardless, we need not resolve the dispute on the standard of review where, as here, our decision would be the same under any standard. *Lee*, 2024 IL App (1st) 232137, ¶ 22.

¶ 17 Defendant first argues that the State failed to demonstrate that no condition or combination of conditions could mitigate the real and present safety threat he posed to any person or the community. More specifically, he contends that the State "emphasized [his] background while

ignoring that [he] was not charged with any violent offenses, nor was any weapon discharged." Defendant also argues that the court erred in finding him not suitable for electronic monitoring based on his Iowa warrant because "the standard before the court was one of safety," not whether defendant was a flight risk.

¶ 18    Although defendant is correct that he was not alleged to have fired a weapon in this case, the nature of the offense was but one factor for the trial court to weigh in deciding whether release conditions would sufficiently ensure public safety. In evaluating a defendant's dangerousness, a trial court must consider the totality of the circumstances, including the defendant's criminal history, whether the defendant is known to possess weapons, and whether the defendant was on any type of release at the time of his arrest. 725 ILCS 5/110-6.1(g)(1-9) (West 2020). Similarly, in determining whether the likelihood that a defendant will comply with release conditions, and whether those conditions will mitigate any danger to the community, a trial court must consider a variety of factors, including the nature of the offense, the defendant's criminal history, the defendant's history of substance abuse, the defendant's recording of appearing at court proceedings, and whether was on pretrial release at the time of his arrest. *Id.* § 110-5(a)(1-5).

¶ 19    Here, the court acknowledged defendant's argument about a lack of violence, but nevertheless found that he was unlikely to comply with any release conditions given his criminal history, out-of-state warrant, willingness to deceive law enforcement, and the fact that he was already on pretrial release for the child endangerment case when he was arrested in this case. These are all valid considerations under the Code (*id.*), and we cannot say that the trial court erred in concluding that defendant would comply with release conditions, especially where he was already on pretrial release at the time of his arrest. In any event, the fact that defendant did not discharge

a firearm in this case is not dispositive, as the armed violence statute is premised on the notion that the presence of a deadly weapon creates an increased risk of danger if a felony victim resists. *People v. Smith*, 191 Ill. 2d 408, 411-12 (2000); see also *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 35 (affirming trial court's dangerousness determination in armed habitual criminal case despite the defendant not brandishing a firearm). Additionally, to the extent defendant argues that his out-of-state warrant did not reflect his dangerousness, the record shows that the court considered the warrant as part of a larger point that defendant would not comply with any release conditions. Of course, placing conditions on a defendant's release will not mitigate a real and present public safety threat if the defendant does not comply with the conditions. See *id.* (trial court must consider "the likelihood of compliance by the defendant with all the conditions of pretrial release"). Thus, there was no error.

¶ 20     As a second ground for relief, defendant argues that "[t]he court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony of class A misdemeanor." However, the record shows that the court's detention order was based on a finding of dangerousness, not ensuring defendant's appearance at later hearings. For example, the State's petition for a detention hearing cited that he "pose[d] a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case." Similarly, although the court opined that defendant was "somewhat of a flight risk," the court's detention order reflects a finding that "[n]o condition or combination of conditions set forth in 725 ILCS 5/110-10(b) can mitigate the real and present threat to the safety of any person or persons or community based on the specific articulable facts of the case[.]" Moreover, the trial court did not

find, nor was the State required to prove, that no release conditions would prevent defendant from committing a subsequent felony or Class A misdemeanor. That requirement is relevant where the State petitions to revoke a defendant's pretrial release based on a new felony or Class A misdemeanor charge. 725 ILCS 5/110-6(a) (West 2022); *People v. Castillo*, 2024 IL App (1st) 232315, ¶ 34 n.1. In this case, the trial court considered whether to deny defendant's release in the first instance, not whether to revoke it. Thus, this argument is without merit.

¶ 21                                    III. CONCLUSION

¶ 22    For the reasons stated, we affirm the judgment of the circuit court.

¶ 23    Affirmed.